A93A0322. THE STATE v. VANSANT.
(431 SE2d 708)

BEASLEY, Presiding Judge.

Vansant was indicted on a charge of DUI. OCGA § 40-6-391 (a) (4). The State appeals the trial court's grant of his motion to suppress.

Citizen Spillers testified that at approximately 1:15 to 1:30 a.m. on March 8, 1992, he was at an IHOP restaurant in Albany, was sitting at a table across from Vansant, and "could tell that he had been drinking." He saw him walk out of the restaurant, fall down, and get into a white, late-model GM van. Vansant backed the van into a truck but left without getting out of the van and checking for damage. Spillers called the police, reported a hit-and-run, gave his and Vansant's names, described the van, gave the direction it was heading, and described Vansant as a white male. He then went to see if any

damage had been done to the truck.

On cross-examination of Spillers, it was established that Vansant, an attorney, had represented Spillers' former wife in a contempt action against him, and he had been forced to pay arrearages due under his divorce decree and attorney fees to Vansant shortly before the incident at the IHOP.

Police Officer Moored testified that he responded to the radio dispatch of the reported accident, which he was told involved a white van and a driver named Vansant, whom he did not know. Traffic was light as Moored drove to the location, and he intercepted Vansant's van within one mile of the IHOP less than two minutes after he received the radio dispatch. He activated his blue lights and then his siren, but Vansant did not stop until he got to a red light. Moored parked and approached the van to talk to Vansant. On initial contact, Officer Moored detected very noticeable signs that Vansant was intoxicated. He advised Vansant that he was stopping him in regard to a reported accident at the IHOP and that another officer had gone to the IHOP to investigate damage to the other vehicle. Vansant stated that he had been at the IHOP but had not been in an accident.

Moored testified that he stopped the van to investigate the reported accident and not a possible DUI, he did not know which part of the van was involved in the accident, and he did not see any damage before he made the stop. Vansant was not speeding or violating any traffic law. Moored decided to stop the van before obtaining corroboration from the officer at the IHOP as to whether or not there in fact had been a hit and run, for the same reason, impracticability, that the police do not inspect a dwelling to see if there has in fact been a burglary before stopping a fleeing suspect.

Contending that the stop was illegal, Vansant filed a motion to suppress evidence obtained as a result of the stop. The motion was heard just before trial. The court distinguished this traffic stop from others, as one concerning a driver who allegedly bumped another car in a parking lot rather than one who drove in a manner posing a threat to the personal safety of the motoring public. Based on Officer Moored's testimony that he would have stopped any white van he saw in the location Vansant's van was supposed to be, the court ruled that this was an arbitrary stop and granted the motion to suppress.

The prosecuting attorney stated that the State would file a notice of appeal instanter. Vansant waived his right to jury trial and upon his request, the trial court stated that the case would proceed to trial. The State objected, arguing that the notice of appeal divested the court of jurisdiction to proceed. The trial court disagreed, stating that a trial court's grant of a preliminary motion does not stay the proceedings. The State argued that its appeal of the trial court's grant of the motion to suppress did stay the proceedings. The trial court re-

jected this argument and called the case for trial even though the State filed a notice of appeal while these discussions between the court and counsel were taking place. Thereafter, the court granted appellant's motion for directed verdict of acquittal due to the State's failure to offer evidence and entered judgment of acquittal.

1. The officer's stop of defendant was authorized and not arbitrary.

" 'Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. (Cit.)' [Cit.]" *State v. McFarland*, 201 Ga. App. 495, 496 (411 SE2d 314) (1991).

We have repeatedly found reasonable and articulable suspicion authorizing a *Terry*-type stop where there has been a reported DUI. *State v. McFarland*, supra; *Philpott v. State*, 194 Ga. App. 452, 453 (1) (390 SE2d 664) (1990) and cits.; *Holcomb v. State*, 191 Ga. App. 379 (1) (381 SE2d 594) (1989); *State v. Noble*, 179 Ga. App. 785 (347 SE2d 722) (1986) and cits.; see also *Chumbley v. State*, 180 Ga. App. 603 (349 SE2d 823) (1986) (driving with a suspended license).

In analyzing police justification for *Terry*-type stops based on citizen reports, the court must take into account "common sense" and weigh not only the intrusion on the stopped citizen's movement but also "the effect of discouraging private citizens who observe suspect conduct from reporting such conduct to law enforcement officials." *State v. Brown*, 178 Ga. App. 307, 309 (1) (342 SE2d 779) (1986).

Reasonable and articulable suspicion has been found where there has been a report of a fleeing suspect committing burglary, armed robbery, or a personal assault. *McGhee v. State*, 253 Ga. 278, 279 (1) (319 SE2d 836) (1984); *Pinkston v. State*, 189 Ga. App. 851, 853 (1) (377 SE2d 864) (1989); *Evans v. State*, 162 Ga. App. 78 (290 SE2d 176) (1982); *Starr v. State*, 159 Ga. App. 386 (283 SE2d 630) (1981); *Duffy v. State*, 156 Ga. App. 847 (2) (275 SE2d 658) (1980); *Butts v. State*, 149 Ga. App. 492 (2) (254 SE2d 719) (1979).

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* (*Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) [(1968)]) recognizes that it may be the essence of good police work to adopt an intermediate response . . . A brief stop of a suspicious individual, in order to determine his identity or to

maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. (Cits.)" (Punctuation omitted.) *Coley v. State*, 177 Ga. App. 669, 670 (1) (341 SE2d 9) (1986), citing *Stiggers v. State*, 151 Ga. App. 546, 547 (1) (260 SE2d 413) (1979).

On the other hand, anonymous telephone tips that someone in a described vehicle is selling drugs does not authorize a forcible stop without further police investigation. See *Moreland v. State*, 204 Ga. App. 218 (418 SE2d 788) (1992) and cits.

The question is whether, under the totality of the circumstances, the telephone tip would "warrant a [person] of reasonable caution in the belief that a stop was appropriate." *Johnson v. State*, 197 Ga. App. 538, 539 (398 SE2d 826) (1990), citing *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990). " ' "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." (Cit.)' " *Johnson*, supra at 539, citing *Adams v. Williams*, 407 U. S. 143 (92 SC 1921, 32 LE2d 612) (1972). The right of a police officer to stop an automobile "is always dependent on the exigencies of the immediate situation." *Anderson v. State*, 123 Ga. App. 57, 59 (1) (179 SE2d 286) (1970).

A "hit-and-run" such as the one reported here is a misdemeanor under OCGA § 40-6-271 (b), which poses an immediate damage to the pedestrian, the motoring public, and property. The police are authorized and required to investigate it.

Appellant argues that after stopping his van but before approaching it and questioning him, the officer should have awaited corroboration from the other officer as to whether any damage had been done to the other car. This argument does not persuade us that the officer's conduct was unreasonable. Immediate inquiry of the driver would have resulted in a far briefer detention if the inquiry revealed that the driver was not Vansant and had not just left the IHOP. " 'The validity of an officer's investigative or protective conduct upon making a "Terry stop" is determined in each case by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced.' [Cit.] In the instant case the state's interest was in protecting the motoring and pedestrian public — an interest whose importance can hardly be overstated; and where a moving vehicle is involved, the interest could scarcely be other than immediate. On the other hand, the intrusion upon [defendant's] privacy would have been minimal as to both time and extent had he not manifested indicia of intoxication, a misdemeanor offense when the subject is operating a vehicle. [Cit.]" *State v. Brown*, supra, 178 Ga. App. at 308.

Officer Moored's stop of a white van driven by a white male

within one mile of the IHOP less than two minutes after he received the radio dispatch in light traffic during early morning hours was not arbitrary on grounds that the officer had not been given a specific and detailed enough description of the fleeing suspect and vehicle. See *McFarland*, supra; *Philpott*, supra; *Butts*, supra.

Citing *Daniels v. State*, 183 Ga. App. 651 (359 SE2d 735) (1987), by way of comparison, Vansant argues that the stop should be held illegal on grounds that it was based on the false report of a crime by someone animated by malice toward him rather than by a disinterested citizen. However, Vansant did not invoke a ruling by the trial court on this issue, and we cannot hold that, as a matter of law, the stop was unauthorized for this reason.

2. The trial court erred in entering the judgment of acquittal.

In criminal cases, a direct appeal may be taken by the State from an order, decision, or judgment sustaining a motion to suppress evidence illegally seized in the case of motions made and ruled upon prior to the impaneling of a jury. OCGA § 5-7-1 (4); *State v. Strickman*, 253 Ga. 287, 288 (319 SE2d 864) (1984). In the civil context, it is expressly provided that the filing of a notice of appeal of an interlocutory order acts as a supersedeas. OCGA § 5-6-34 (b); *Lawrence v. Whittle*, 146 Ga. App. 686 (1) (247 SE2d 212) (1978). This is an application of the general rule in both civil and criminal cases that the filing of a notice of appeal serves as supersedeas. OCGA §§ 5-6-45; 5-6-46. This general rule applies where, as here, the State files an immediate, direct appeal as of right from a trial court's grant of a motion to suppress evidence illegally seized. A contrary rule would eliminate the State's right of appeal and render OCGA § 5-7-1 (4) a nullity since the trial of the case would render questions as to the admissibility of the suppressed evidence moot. Where, as here, the evidence is critical to the State's case, a directed verdict of acquittal necessarily follows. Entry of such a verdict based on an insufficiency of the evidence to support the charge is not generally appealable by the State. See *State v. Warren*, 133 Ga. App. 793 (213 SE2d 53) (1975); see also *State v. Fly*, 193 Ga. App. 190 (387 SE2d 347) (1989). An exception exists where, as here, the trial court dismisses charges on erroneous grounds before jeopardy attaches. See *State v. Cooperman*, 147 Ga. App. 556, 557-558 (2) (249 SE2d 358) (1978); see also *Hunter v. State*, 257 Ga. 571, 574 (4) (361 SE2d 787) (1987). Moreover, the trial court lost jurisdiction when the notice of appeal was filed.

*Judgment reversed. McMurray, P. J., and Cooper, J., concur.*

DECIDED MAY 11, 1993 —
RECONSIDERATION DENIED JUNE 1, 1993 

*Britt R. Priddy, District Attorney, B. Martin First, Assistant District Attorney,* for appellant.

*Vansant, Corriere & McClure, K. Alan Dasher, Richard L. Hodge,* for appellee.