A97A0150. LOMBARD CORPORATION v. COLLINS et al.
(494 SE2d 538)

BIRDSONG, Presiding Judge.

This is an appeal from the superior court's order granting appellees/defendants' motion to dismiss and dismissing appellant/plaintiff's motion for summary judgment on the pleadings. We first reviewed this case in *Lombard Corp. v. Collins*, 224 Ga. App. 282 (480 SE2d 47) where the relevant facts pertinent to this appeal are reported. Appellant brought suit for declaratory judgment and injunctive relief asserting the unconstitutionality of the Georgia intangible tax (OCGA § 48-6-20 et seq.); appellant corporation had been assessed an intangible tax in the amount of $56.29. The record reflects that while suit was pending, the intangible tax assessment at issue was paid (without the prior consent of the appellant or of the trial court) by a person who was not a party to the litigation. (The tax was paid by a partner of an established law firm who apparently perceived that both himself and certain shareholders of corporations incorporated or headquartered in Georgia conceivably could be adversely affected by a ruling in the *Lombard* case, and that the issues there raised would be better avoided or resolved in another factual context.) Thus, the payment of the taxes was made, as we

held in *Lombard*, supra, by a third party interloper. After payment of the taxes by the interloper, the trial court held that the appellant's suit was moot and the motion to dismiss was granted. We found that, under current Georgia law, the action "would appear to become moot, unless there exists some exception to the rule which would preclude a third-party interloper from depriving a corporate entity of this state of a judicial adjudication of its cause of action in our courts by said third party indirectly injecting himself into the outcome of the litigation . . . by paying the tax in controversy." Id. at 284. Because this posed a question of first impression and more importantly, because of the serious public and legal policy questions which could arise if persons not parties to litigation are able to interfere at will and, in effect, buy out a pending lawsuit, we certified certain questions to the Supreme Court of this State, pursuant to Art. VI, Sec. V, Par. IV and Art. VI, Sec. VI, Par. III (7), Ga. Const. of 1983, seeking their guidance as to this sensitive legal issue. (We elected to seek guidance because we were concerned that if public policy allowed this type of conduct, powerful persons or legal entities could buy out lawsuits at will to which they were not party litigants but in which they had a substantial interest as to judicial outcome; and that such a policy conceivably could result in the birth of the undesirable practice of targeting suits of major social and legal import for mooting by buyout, thereby preventing legal opinions from being entered which could be detrimental to the special interests of such third-party interlopers.) The Supreme Court, however, transmitted the case back to this Court with the certified questions unanswered. We must now address this issue of first impression being ever mindful of the legal significance of our holding. *Held*:

1. We first sought guidance as to the application of the provisions of Art. I, Sec. I, Par. XII, Ga. Const. of 1983. The Supreme Court, citing *Pitts v. General Motors &c. Corp.*, 231 Ga. 54 (199 SE2d 902), declined to rule on the certified constitutional question because the trial court expressly declined to rule thereon. We did not certify this issue because we believed appellant had adequately preserved a constitutional issue on appeal; rather, we certified this issue because we perceived that the answer would shed judicial light on whether the mooting of appellant's suit, due to the actions of a third-party interloper, would violate the public policy of this state. As this Court is without authority to interpret a state constitutional provision, particularly as to issues of first impression (but can only apply established constitutional law principles to existing case facts), *Kolker v. State*, 193 Ga. App. 306 (1) (387 SE2d 597), aff'd 260 Ga. 240 (391 SE2d 391); accord *Phillips v. MacDougald*, 219 Ga. App. 152, 155 (2) (e) (464 SE2d 390), we now must consider the public policy issue without benefit of a ruling as to what effect, if any, the constitutional right to

the courts has regarding this matter.

2. We now consider as a matter of first impression whether it violates the public policy of this state for a third party, who is not a party to a lawsuit, to pay the taxes of a party plaintiff without the prior consent of either the trial court or the party plaintiff, thereby causing the plaintiff's case to become moot? Considering the legitimate danger posed to the ordinary citizen's ability to obtain meaningful access to the courts of this state should such a practice and its potential variations be condoned, the balancing of the interests of the judiciary in the preservation of the integrity of the Georgia judicial system in the eyes of the citizens of this state, and the fact that appellant has been denied his day in court (as to the adjudication of an issue which we cannot say is frivolous) by the uninvited actions of a third-party interloper, we conclude that it violates public policy of this state to allow a case to be mooted by the intervention of a third party who is not a party to the litigation, under the circumstances attendant in this particular case. Accordingly, we hold that a legitimate exception exists to the usual rules of mootness under these existing circumstances, and that the suit was not rendered moot by the payment of the tax assessment by the third party.

*Judgment reversed. Ruffin and Eldridge, JJ., concur specially.*

RUFFIN, Judge, concurring specially.

I fully agree with all that is said in the majority opinion because I, too, believe that as a matter of public policy an interloper should not have the ability to deprive a party of the adjudication of his or her legitimate claims. However, payment of the intangible tax was not the trial court's sole basis for finding appellant's claim for declaratory relief moot. In 1996 our Legislature repealed the intangible tax which is being challenged on constitutional grounds in this case. See Ga. L. 1996, p. 117, § 6, effective March 21, 1996. The trial court held that appellant's claim for declaratory relief was moot not only due to payment of the tax, but also because " '[t]he repeal of Georgia's intangible tax statute relieved [appellant] from any risk of an intangible tax assessment for the present or any future year. In addition, the payment of the 1994 tax also relieved [appellant] from any risk of future collection of intangible tax already assessed.' " *Lombard Corp. v. Collins*, 224 Ga. App. 282, 283 (480 SE2d 47) (1997). I write separately to address this part of the trial court's holding.

Although I agree with the trial court that rescission of the tax relieved appellant of numerous risks associated with the present and future enforcement of the tax, the mere repeal of the tax statutes did

not render all related interests moot.[1] In a long line of cases, the United States Supreme Court has held that due process requires a clear and certain remedy for taxes collected in violation of the Constitution. See *Reich v. Collins*, 513 U. S. ___ (115 SC 547, 130 LE2d 454) (1994). In fact, the court in *Reich* found that " 'a denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself a contravention of the Fourteenth Amendment[.]' [Cit.]" Id. at 130 LE2d 454, 458. Although due process does not necessarily require a state to provide a refund of such unconstitutional taxes, it does require a state to provide taxpayers with either a predeprivation remedy in which to challenge the imposition of the tax, a postdeprivation regime such as a refund procedure, or a hybrid regime which might incorporate both. See id. at 130 LE2d 454, 459. Accordingly, though it is true that the State may no longer enforce the tax against appellant, it is also true that due process requires that the State provide appellant, and other similarly situated taxpayers, with a scheme to remedy an unconstitutionally exacted tax. Therein lies the issue which breathes life into the appellant's constitutional challenge here.

As the court found in *Reich*, Georgia law indeed provides for a postdeprivation remedy in the form of a refund statute. Id. This statute, codified at OCGA § 48-2-35, provides that subject to a limitation period "[a] taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him under the laws of this state. . . ." OCGA § 48-2-35 (a). Although the Supreme Court of Georgia has held that this refund statute "does not address the situation where the law under which the taxes are assessed and collected is itself subsequently declared to be unconstitutional or otherwise invalid[,]" the decision in which that holding was presented has been vacated by the United States Supreme Court. *Reich v. Collins*, 262 Ga. 625, 627-628 (2) (422 SE2d 846) (1992), vacated, *Reich v. Collins*, 509 U. S. 918 (113 SC 3028, 125 LE2d 717) (1993). Accordingly, a viable issue exists concerning whether taxpayers have a right to a refund of intangible taxes paid if the tax is subsequently declared unconstitutional.

I am authorized to state that Judge Eldridge joins in this special concurrence.

DECIDED NOVEMBER 19, 1997 —
RECONSIDERATION DENIED DECEMBER 4, 1997 — ■

---

[1] For a general discussion concerning the mootness effects of statutory change, see Moore's Federal Practice, Par. 101.98 (3rd ed. 1997).

*Marvin P. Nodvin*, for appellant.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Harold D. Melton, Stefan E. Ritter, Assistant Attorneys General, Jonathan A. Weintraub*, for appellees.